IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-00836-PSF

SCOTT A. DUKE,

 Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

 Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter was set for oral argument on February 5, 2007 on plaintiff's appeal of denial of social security benefits. Having considered the written arguments and submissions of counsel, reviewed the record, and heard oral argument of counsel, the Court now enters the following Order.

**I. BACKGROUND**

Plaintiff Scott A. Duke appeals from the decision of the Commissioner of Social Security denying his application for social security disability benefits. The decision of the Commissioner became final on March 8, 2006 when the Appeals Council notified plaintiff that it had denied review of the decision of the Administrative Law Judge ("ALJ"). (AR[1] 4-6). Plaintiff timely filed his appeal from the final decision of the

---

[1] The Administrative Record (AR) in this case consists of one volume, pp. 1-210.

Commissioner on May 2, 2006 (Dkt. # 3).  The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Plaintiff, a 45-year old man, filed his claim for benefits on or about June 9, 2004, seeking disability benefits beginning January 3, 2004.  (AR 174-76).  In his Disability Report, Mr. Scott listed "Bi-polar, low thyroid" as the conditions that limit his ability to work.  (AR 57).  He also contends that the side effects from the medication he is on for his illness limit his ability to work because he is tired all the time, gets bad tremors in his hands, and his stomach "does not feel good."  (AR 57-58).

After initial denial of his claims, plaintiff appealed and a hearing was held before the ALJ in Denver, Colorado on June 16, 2005 (AR 183-210).  Plaintiff testified at the hearing and was represented by counsel.  Also testifying was Nora Dunne, a vocational expert, and Ken W. Duke, plaintiff's father.  Upon review, the ALJ denied his application in a written decision issued on July 26, 2005 (AR 14-22).

## II.     THE ALJ'S DECISION OF JULY 26, 2005

The  ALJ denied plaintiff's application for benefits at step five of the five-step process.  *See generally Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988).  The ALJ found that plaintiff had severe impairments and was unable to perform his past relevant work, but that other jobs existed in significant numbers in the regional and national economies that plaintiff could perform considering his residual functional capacity, age, education, and work experience.  (AR 21).

In reaching his determination, the ALJ found that plaintiff had the medically determinable impairments of an affective disorder and degenerative joint disease of the

lumbar spine, which constitute severe impairments because they cause more than minimal functional limitations. (AR 16). The ALJ also found that plaintiff's slight hypothyroidism and substance abuse disorder were not severe impairments. (*Id.*). Plaintiff does not challenge these findings.

The ALJ next found that plaintiff's impairments or combination of impairments did not meet the criteria of any of the listed impairments in Appendix 1 to Subpart P of the Social Security regulations. (*Id.*). With regard to plaintiff's degenerative joint disease of the lumbar spine, the ALJ found there was no evidence of nerve root impingement or compromise of the spinal cord as required by section 1.04 of the listed impairments. (AR 16-17). The ALJ next evaluated plaintiff's affective disorder under section 12.04 of the listed impairments. (AR 17). To meet the requirements under that section, plaintiff would need to exhibit "marked" limitation in at least two of the "B" criteria or establish the presence of the "C" criteria. (*Id.*). The ALJ adopted the state agency consulting physician's opinion that there was no evidence to establish the presence of the "C" criteria and that there was only "mild" to "moderate" limitation with respect to the "B" criteria ("mild" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration persistence, or pace; and "insufficient evidence" of any episodes of decompensation). (*Id.*). The ALJ found this opinion was well-supported by the record evidence, and plaintiff does not challenge this finding.

The ALJ found as follows with regard to plaintiff's residual functional capacity ("RFC"):

3

> [The ALJ] finds that the claimant has the residual functional capacity to perform work-related activities with pushing, pulling, lifting, and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently; sitting, standing, and/or walking about six hours each during an eight-hour workday; he is precluded from climbing ladders or scaffold[s], limited to occasional bending, squatting, kneeling, and climbing; in deference to his mental impairments he is precluded from contact with the general public, limited to occasional interaction with co-workers, and precluded from performing complex tasks.

(AR 19). In arriving at his determination of plaintiff's RFC, the ALJ relied on plaintiff's testimony, function reports submitted by plaintiff, and the findings of the state agency physician and consultants. (AR 17-19). Ultimately, the ALJ accorded "significant weight" to the opinion of the state agency consultants, Dr. Richard Garnand and Dr. Henry Fieger, that plaintiff is able to: perform light work with occasional climbing, balancing or stooping, and frequent kneeling, and crouching; follow simple instructions; sustain ordinary routines; work on a limited basis with co-workers and supervisory contact; and have minimal interaction with the public. (AR 19).

The ALJ held that the above opinions were well-supported by and consistent with the record as a whole, including the notes of plaintiff's treating and examining physicians. (*Id.*). With respect to plaintiff's degenerative joint disease of the lumbar spine, although plaintiff testified to "a great deal of physical limitation," the ALJ found that the objective medical evidence and plaintiff's own testimony about his daily activities belied those alleged restrictions. (AR 18). The ALJ noted that the only objective evidence of plaintiff's back problems was a March 11, 2004 x-ray showing "minimal" degenerative changes in the lumbar spine; that plaintiff's physical

4

examinations have been relatively unremarkable other than "residuals of his alcohol withdrawal" and "generalized pain"; and that he had been doing well on low-dose narcotic therapy. (*Id.*). In addition, plaintiff was quoted in an August 31, 2004 function report that he was capable of watching his spouse's children, taking care of several pets, cooking, cleaning, doing laundry, and shopping. (*Id.*).

That same testimony, according to the ALJ, contradicted plaintiff's assertion of significant limitation due to his mental impairments. (*Id.*). The ALJ took into consideration that plaintiff had been prescribed Zoloft by a general practitioner following a suicide attempt by plaintiff while intoxicated;[2] that an August 18, 2004 office note reflected that plaintiff had denied any fatigue despite sleeping less than four hours per day and passing out during the next day; and that plaintiff stated in a November 11, 2004 report that he was doing well on Zoloft, with complete control of his anxiety. (AR 18-19).

The ALJ recognized that Dr. Brad Marten, who conducted a psychological evaluation of plaintiff on October 13, 2004, assigned plaintiff a Global Assessment of Function ("GAF") score of 49, indicating serious symptoms. (AR 19). However, Dr. Marten also noted that plaintiff had an adequate level of persistence, was mildly slow in his pace, and had a mild to moderate impairment in his concentration. (*Id.*). Those limitations, the ALJ concluded, were reflected in plaintiff's RFC by his preclusion from

---

[2] Plaintiff's suicide attempt occurred on March 10, 2004. (AR 15). He was discharged from the hospital on March 14, 2004 with a diagnosis of alcoholism, chronic, severe; alcohol withdrawal syndrome; major depressive disorder; degenerative disk and degenerative joint disease of the lumbar spine; and glove and stocking paresthesias of both lower extremities secondary to alcoholism. (AR 15-16).

performing complex tasks. (*Id.*). The ALJ also concluded that Dr. Marten's observations were "not entirely" consistent with the other medical evidence for that time frame—the August and November 2004 office notes—indicating plaintiff was exhibiting only minimally depressive symptoms. (*Id.*). Finally, the ALJ noted that, although the file contains a note dated April 25, 2005 from plaintiff's treating physician at Summit Medical Clinic indicating that plaintiff "may not be still employable", there were no medical facts in the record to support that assertion. (*Id.*).

The ALJ then held that, based on his RFC, plaintiff could not perform his past relevant work, which the vocational expert described as a janitorial worker, dishwasher, mail courier, and roofer. (AR 20). However, the vocational expert testified that a person of plaintiff's age, education, work background, and RFC could perform other jobs such as:

! assembly press operator (light, unskilled work with 95,000 positions in the national economy and 880 positions in the regional economy);

! electronics worker (light, unskilled work with 150,000 positions in the national economy and 1,050 positions in the regional economy); and

! escort vehicle driver (sedentary, unskilled work with 251,000 positions in the national economy and 1,656 positions in the regional economy).

(*Id.*). Based on this testimony, the ALJ found that plaintiff had the RFC for a limited range of light, unskilled work, and that there were a significant number of jobs in the national and regional economies that he could perform. (*Id.*) Accordingly, the ALJ found plaintiff was not disabled as defined in the Act. (AR 20-22).

### III.     PLAINTIFF'S APPEAL

On appeal plaintiff first argues the ALJ erred in determining plaintiff's RFC. He asserts the ALJ erroneously relied on only part of Dr. Garnand's opinion, which taken as a whole reflects a level of functioning incommensurate with the demands of several basic mental work requirements. Pl. Br. (Dkt. # 13), at 6. He also argues that, in determining plaintiff's RFC, the ALJ failed to weigh all of plaintiff's mental impairments, including those found not to be severe, failed to consider the side effects of plaintiff's medication (dizziness, drowsiness, wavy or blurry vision, hand tremors), and failed to consider "the chronic progressive nature" of plaintiff's depression, relying instead on past daily activities plaintiff was no longer conducting. *Id.* at 8. Finally, he contends that the ALJ erred in finding that his depression was well-controlled by medication, arguing that the ALJ took isolated portions of the physicians' testimony to support that finding. *Id.* at 9. What plaintiff's argument boils down to is that the ALJ failed to consider all of the relevant evidence in the record in making his RFC determination.

Second, plaintiff contends the ALJ erred in holding that the Commissioner met her burden at step five. Pl. Br. at 11-12. Plaintiff argues that the errors in the ALJ's evaluation of plaintiff's RFC infected the step-five analysis, and as a result the hypothetical posed to the vocational expert did not take into account moderate mental limitations based on all of plaintiff's mental impairments, or plaintiff's pain and side effects from his medication. *Id.* at 12.

**IV.   ANALYSIS**

    **A.   Whether the ALJ Properly Evaluated All the Evidence in Determining Plaintiff's RFC.**

Plaintiff essentially argues that the ALJ erred because he emphasized the evidence supporting a finding of no disability, while ignoring contrary evidence, and by failing to explain how he resolved any inconsistencies in the record. The Court finds that the ALJ here performed an adequate evaluation of all the evidence and that the ALJ's assessment of plaintiff's RFC is supported by substantial evidence.

Plaintiff argues the ALJ relied on only part of the opinion of Dr. Richard Garnand, who prepared a mental RFC assessment on October 21, 2004 based on the record evidence at that time, including a report prepared by Dr. Brad Marten, a psychologist who had examined plaintiff on October 11, 2004. He also contends the ALJ failed to consider plaintiff's low GAF scores, failed to consider the functional effects of plaintiff's depressive symptoms, failed to "assess the nature and extent of [plaintiff's] mental limitations," failed to weigh all of plaintiff's mental impairments, including those he found not severe, failed to consider the side effects of plaintiff's medication, and failed to consider "the chronic progressive nature" of plaintiff's depression, allegedly relying on isolated and outdated portions of plaintiff's testimony regarding his daily activities. Pl. Br. at 6-9. Plaintiff's contentions are without merit.

Dr. Garnand's and Dr. Marten's opinions can be summarized as follows: Dr. Marten reported that plaintiff appeared cooperative, though vague in his response to inquiry; his behavior appeared underactive and listless; he displayed prominent tremors

in his hands; he displayed depression in mood with anxious affect; his speech though appeared clear, concise and logical. (AR 130). Plaintiff reported to Dr. Marten that he experienced lack of energy, weekly episodes of tearfulness, thoughts of hopelessness, helplessness, and worthlessness, a tendency to stay in bed for prolonged periods, decreased social activity, isolation, irritability, lack of patience, and worry. (*Id.*). Dr. Marten also noted that plaintiff cited difficulty with concentration and short-term memory, and anxiety associated with people and social situations. (AR 131). Plaintiff indicated to Dr. Marten that he was physically able to accomplish all basic activities of daily living, though he also cited low motivation. (AR 132). Dr. Marten diagnosed plaintiff with major depressive disorder, recurrent, moderate; alcohol dependence; polysubstance abuse in full remission; social anxiety disorder; personality disorder not otherwise specified with dependent features, and degenerative disc/joint disease. (*Id.*). However, he appeared to rule out obsessive-compulsive disorder. (*Id.*). He assessed plaintiff's GAF as follows: current level of functioning 51, past year level of functioning 49.[3] (*Id.*). Dr. Marten also noted that plaintiff presented with mostly adequate level of persistence; his pace appeared mildly slow; he presented with mild to moderate impairment in his capacity for attention and concentration; and he indicated a mild level of improvement within the past year based on successful administration of psychiatric medication. (AR 132-33).

---

[3] A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning; a GAF of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting), or serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM) IV at 32 (4th ed. 1994).

In his mental RFC assessment, Dr. Garnand reported that plaintiff was moderately limited in the following areas: ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers; ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and ability to respond appropriately to changes in the work setting. (AR 147-48). Based on those limitations, Dr. Garnand concluded that plaintiff can follow simple instructions, can sustain ordinary routines and make simple work-related decisions, can accept supervision and relate to coworkers if contact is not frequent or prolonged, and must have minimal to no interaction with the general public. (AR 149).

After reviewing the ALJ's findings, the Court concludes that the ALJ did not improperly rely on only part of Dr. Garnand's opinion. Rather, the ALJ accurately summarized Dr. Garnand's opinion in its entirety, which supports the ALJ's findings. (AR 19). Contrary to plaintiff's argument, the ALJ recognized that Dr. Marten had assigned plaintiff a GAF of 49 with regard to his past year level of functioning and considered it in conjunction with the remainder of the evidence in the record. (*Id.*). *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (the ALJ can consider the degree to which a treating physician's opinion is supported by relevant medical evidence and the consistency between the opinion and the record as a whole in weighing the opinion). The ALJ also considered an August 18, 2004 office note from

plaintiff's treating physician, Dr. Pankaj Nashikkar, that plaintiff's anxiety and bipolar disorder were stable on medications, as well as a November 5, 2004 office note from Dr. Nashikkar that plaintiff's anxiety disorder was well-controlled with Zoloft and his bipolar disorder was "stable with Zoloft, although he . . . still feels a little bit depressed." (AR 166, 169-70).  Finally, the ALJ recognized a treatment note dated April 25, 2005 from Dr. Nashikkar stating that plaintiff "may not be still employable," and correctly noted the lack of evidence to support that general statement.  (AR 19, 164).  *See* 20 C.F.R. §§ 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.") and 404.1527(e) (medical source opinions on nonmedical issues reserved to the Commissioner not given special significance).

       The ALJ took all of the above evidence into account in according significant weight to the mental RFC assessment conducted by Dr. Garnand and, in turn, in concluding that based on plaintiff's mental impairments he was precluded from contact with the general public, limited to occasional interaction with coworkers, and precluded from performing complex tasks.  (AR 19).  The evidence demonstrates that, contrary to plaintiff's arguments, the ALJ (1) did not rely on only part of Dr. Garnand's opinion, (2) considered plaintiff's low GAF scores, (3) considered the functional effects of plaintiff's depressive symptoms, (4) assessed the nature and extent of plaintiff's mental limitations, and (5) considered plaintiff's anxiety and personality disorders.

       In addition, plaintiff's complaint that the ALJ did not take into account the side effects of plaintiff's medications (dizziness, drowsiness, wavy or blurry vision, and hand

11

tremors) lacks merit.  Although Dr. Marten's report noted the presence of hand tremors and plaintiff's report of dizziness and occasional wavy or blurry vision (AR 128, 130, 131), these symptoms were not reported in any of the physical evaluations or any other mental evaluations, including those of Dr. Nashikkar.  Plaintiff had complained in the past of drowsiness shortly after his suicide attempt (AR 123); however, he testified at the hearing that the Zyprexa, which had caused the drowsiness, was "not really making [him] sleepy anymore."  (AR 195).  In addition, there is no evidence that he ever complained to his treating physician about a problem with drowsiness.  Thus, the record does not support plaintiff's assertions that the ALJ failed to consider the side effects of his medication in light of the record as a whole.

Finally, the record does not support plaintiff's argument that the ALJ erred in finding that plaintiff's mental impairments were stable with medications.  Pl. Br. at 9.  The August 18, 2004 office note from Dr. Nashikkar states that plaintiff's bipolar disorder and anxiety disorder were stable on medications.  (AR 170).  The November 5, 2004 office note from Dr. Nashikkar states that plaintiff's anxiety disorder was "well controlled with Zoloft" and his bipolar disorder was "stable with Zoloft, although he . . . still feels a little bit depressed."  (AR 166).  Dr. Nashikkar also increased plaintiff's dosage of Zoloft at that time (*id.*), but his notes comport with the ALJ's conclusion that plaintiff's medical conditions were stable and that he was doing well on his medications.  In addition, plaintiff had reported to Dr. Marten on October 11, 2004 that his medication regimen was helpful to him at that time.  (AR 130).  With regard to plaintiff's complaints of pain, Dr. Nashikkar noted that the pain was well-controlled with Darvocet and that

plaintiff indicated he no longer had to take the medication on a regular basis.  (AR 166).

For the foregoing reasons, the ALJ sufficiently and appropriately evaluated all of the evidence received, including all medical opinions, in assessing plaintiff's RFC.  *See* 20 C.F.R. § 404.1527(c).

### B. Whether the ALJ Properly Determined Plaintiff's Ability to Adjust to Other Work.

Plaintiff next contends that "[t]he multiple errors in the evaluation of [plaintiff's] RFC infected the step-five analysis here" and that, because of those errors, the hypothetical posed to the vocational expert "failed to take into account moderate mental limitations based upon all mental impairments set forth by Dr. Garnand."  Pl. Br. at 12.  As discussed above, the ALJ did not err in assessing plaintiff's RFC.  Accordingly, the hypothetical posed to the vocational expert, which comported with the ALJ's RFC assessment, was proper.[4]  The Court finds no error in the ALJ's findings at step five of the five-step process.

## V. CONCLUSION

For the reasons set forth above, the Court finds that there is substantial evidence in the record to support the ALJ's findings; therefore, the Commissioner's

---

[4] The following hypothetical was posed:  "Let's assume an individual the same age and educational background as the Claimant.  Limited to an exertional level of a full range of light with non-exertional limitations of occasional bending, squatting, kneeling, and climbing.  No use of ladders or scaffolds.  No dealing with the general public, occasional interaction with coworkers, no complex tasks defined as an SVP [Specific Vocational Preparation rating] of two or less."  (AR 205).

decision is AFFIRMED. The Clerk of the Court shall enter judgment accordingly. Oral argument in this matter, set for February 5, 2007 at 1:30 p.m., is hereby VACATED.

DATED: January 31, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge